**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN JAMES KARPINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-cv-00018 |
| | ) | |
| v. | ) | District Judge Stephanie L. Haines |
| | ) | Magistrate Judge Maureen P. Kelly |
| SOMERSET COUNTY, PRIMECARE | ) | |
| MEDICAL, INC., BRIAN PELESKY, | ) | Re: ECF No. 32 |
| DAVID KRAUSE, JOHN DOE #1, JOHN | ) | |
| DOE #2, JOHN DOE #3, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

I.    **RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Partial Motion to Dismiss Plaintiff's Second Amended Complaint ("Partial Motion to Dismiss"), ECF No. 32, filed by Defendants Brian Pelesky ("Pelesky") and David Krause ("Krause") be granted as set forth herein.

II.    **REPORT**

A.    **FACTUAL BACKGROUND**

Plaintiff Steven James Karpinski ("Karpinski") brings this civil rights action *pro se* for injuries allegedly sustained by him during his three-week incarceration at the Somerset County Jail from November 7, 2024, through November 27, 2024. The factual allegations set forth in this Report and Recommendation are taken from the Second Amended Complaint. ECF No. 30.

On November 7, 2024, Karpinski was transferred to the Somerset County Jail from the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"). Id. ¶¶ 5, 13. He

1

was booked into the system at approximately 1:00 p.m. and was placed in administrative custody and moved to Security Cell #1 on level two. Upon arrival, he was issued one t-shirt, one pair of boxers, one short-sleeved uniform top, one pair of uniform pants, one sheet, and one thin blanket. Id. ¶¶ 14-15.

Security Cell #1 was extremely cold (estimated by Karpinski to be 50 degrees Fahrenheit), and multiple times every day he complained of the cold and requested that the heat be turned on or that he be issued an extra blanket. Id. ¶¶ 16-18. Karpinski was told numerous times by the medical staff that it was "admin's" duty to control the heat and/or approve an extra blanket and by the guard staff that it was "medical's" duty to do so. Id. ¶¶ 19-20. Karpinski believes Somerset County Jail and PrimeCare Medical, Inc. ("PrimeCare") have a policy, custom, or practice of refusing to turn on the heat on level two until the end of November and/or prohibiting staff from issuing an extra blanket, regardless of need. He believes that John Doe #1 created the policies for Somerset County Jail and that John Doe #2 created the policies for PrimeCare. Id. ¶¶ 22-28. He has been told numerous times by guard staff that it was standard operating procedure to not turn the heat on until the end of November. Id. ¶ 21.

During a sick call appointment on November 19, 2024, Karpinski informed a nurse about the extremely cold temperatures, and she informed him that she would see what she could do. Id. ¶ 29. Likewise, on November 21, 2024, during a mental health appointment, Karpinski informed "Jane Doe #1" of the cold temperatures, and she told him she would notify "admin." Id. ¶ 32. Karpinski believes that Pelesky, Krause, and John Doe #3 were informed of these complaints but did not ameliorate the harsh conditions. Id. ¶¶ 30-31, 33-34. Karpinski also believes that several correctional officers and medical staff informed Pelesky, Krause, and John Doe #3 of his complaints without action being taken by Pelesky, Krause, and John Doe #3. Id. ¶¶ 35-38.

In addition, Karpinski has a condition, due to trauma and surgeries, which damaged his right pupil, rendering it fully dilated and unable to close, resulting in his home jail – SCI-Huntingdon – prohibiting his outside clearance, as bright light like sunlight causes him pain and headaches.  Id. ¶¶ 45-46.  Upon Karpinski's transfer to Somerset County Jail, SCI-Huntingdon sent a DC-487 *Transfer Health Information* form that contained this information.  Id. ¶¶ 42, 46.  Karpinski believes that Pelesky, Krause, and John Doe #3 received the information.  Id. ¶ 44.

Despite this information, at Somerset County Jail Karpinski was only offered outside recreation.  Id. ¶ 47.  He made numerous verbal requests for access to the day room, which he believes were conveyed to Pelesky and Krause, but these were denied.  Id. ¶¶ 48-49.  In addition, on November 8, 2024, and November 21, 2024, Karpinski submitted written requests for access that went unanswered by Pelesky and Krause.  Id. ¶¶ 50-51.  Karpinski believes that Somerset County Jail has a policy, custom, or practice that prohibits inmates housed in the Security Unit under administrative custody status from indoor, out-of-cell recreation.  Id. ¶ 52.  As a result, he was denied all out-of-cell recreation for the duration of his time at Somerset County Jail.  Id. ¶ 54.

Defendant Pelesky, as Warden, Defendant Krause, as Deputy Warden, and John Doe #3, as medical supervisor, are part of the administrative staff at Somerset County Jail.  Id. ¶¶ 8, 9, 12, 55.

## B.    PROCEDURAL HISTORY

Karpinski filed a Complaint in the Somerset County Court of Common Pleas on November 21, 2024, against Somerset County, Somerset County Jail, and PrimeCare in their official capacities, and against Pelesky, Krause, and John Does #1 and #2 in their individual and official capacities.  ECF No. 1-2.  On January 17, 2025, Defendants removed the case to this Court.  ECF No. 1.  All of the non-John Doe Defendants then filed motions to dismiss as to each of Karpinski's claims against

them, along with briefs in support thereof.  ECF Nos. 7, 8, 10, 11.  In response, Karpinski filed an Amended Complaint against the same Defendants.  ECF No. 13.

In response to the Amended Complaint, Defendants Somerset County, Somerset County Jail, Pelesky, and Krause (collectively the "Somerset Defendants") and Defendant PrimeCare filed separate motions to dismiss, and briefs in support thereof, seeking dismissal of the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 15, 16, 18, 19.  Karpinski filed a response in opposition and supporting brief as to each of the motions to dismiss.  ECF Nos. 22-25.

On July 17, 2025, the Court issued a Report and Recommendation recommending that the motion to dismiss filed by PrimeCare be denied and that the motion to dismiss filed by the Somerset Defendants be granted in part and denied in part.  ECF No. 26.  It further recommended that all claims against Somerset County Jail be dismissed with prejudice with no leave to amend and that Karpinski be granted an opportunity to file a Second Amended Complaint within twenty-one days to correct the pleading deficiencies in regard to Defendants Pelesky and Krause.  Id.

Karpinski responded by moving for leave to file another amended complaint, ECF No. 28, which United States District Judge Stephanie L. Haines granted on September 26, 2025, ECF No. 29.  Judge Haines further dismissed the Report and Recommendation as moot.  Id.

On September 29, 2025, the operative Second Amended Complaint was filed.  ECF No. 30.  In the Second Amended Complaint, Karpinski brings two claims against Somerset County, PrimeCare, Pelesky, Krause, and John Doe Nos. 1-3.  At Count One, he alleges that Defendants' actions and inactions in regard to the temperature of his cell constitute deliberate indifference to his health and safety, in violation of the Eighth Amendment.  At Count Two, he asserts that Defendants' actions and inactions in regard to his requests for out-of-cell exercise constitute

deliberate indifference to his health and safety, in violation of the Eighth Amendment. Id. ¶¶ 56-59.  He seeks declaratory and injunctive relief, as well as compensatory damages in the amount of $1,000.00 per day per count and punitive damages of $5,000.00 per day per count.  He further seeks nominal damages, reasonable attorney fees and costs, and any other relief the Court deems just, proper, and equitable. Id. at 10-11.

PrimeCare filed an Answer on October 9, 2025.  ECF No. 31.  On October 13, 2025, Defendants Pelesky and Krause filed the instant Partial Motion to Dismiss and brief in support thereof.  ECF Nos. 32, 33.[1]  Karpinski filed a Brief in Opposition on November 18, 2025.  ECF No. 36.

The Partial Motion to Dismiss is ripe for consideration.

C.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In assessing a plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'"  Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)).  "However, the Court

---

[1]    The other remaining Defendant, Somerset County, has not responded to the Second Amended Complaint.

'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Id. (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ((A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'") "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

**D.    DISCUSSION**

In each of Counts One and Two, Karpinski alleges that the Defendants, including Pelesky and Krause, are liable under 42 U.S.C. § 1983 for deliberate indifference to his health and safety, in violation of the Eighth Amendment to the United States Constitution. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.

In moving to dismiss these claims, Pelesky and Krause argue that Karpinski has failed to establish that they had the requisite personal involvement in the alleged deprivation of his rights or that they were decision-makers possessing the final authority to establish policy. ECF No. 33 at 2, 5-6. They contend that the Second Amended Complaint merely alleges that they are part of the administrative staff of Somerset County Jail responsible for the implementation of policy and for training and supervising employees. Id. at 5. They contend that such allegations are insufficient to state a claim under Section 1983 because they amount to "nothing more than allegations of respondeat superior liability, which does not apply in civil rights claims brought pursuant to 42 U.S.C. § 1983." Id. They argue that, at best, Karpinski hypothesizes that they may have had knowledge of the conditions that form the basis for his claims. Id. at 6.

Karpinski counters that he has pled that Pelesky and Krause were aware of the constitutional violations that were happening yet failed to intervene. ECF No. 36 at 2. He asserts that such allegations are sufficient to establish Pelesky and Krause's personal involvement. Id. He further argues that "[s]upervisory liability may also be available where a supervisor implements or maintains a policy or practice that creates an 'unreasonable risk' of a deprivation of a constitutional right by his subordinates and the 'supervisor's failure to change the policy or employ corrective practices' results in unconstitutional conduct." Id. at 3 (quoting Argueta v. U.S. Immigr.

& Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011)). Karpinski also contends that Pelesky and Krause's deliberate indifference to his plight establishes liability. Id. at 4.

Pelesky and Krause are correct that to prevail on a Section 1983 claim, a plaintiff must show that a defendant was "personally involved" in the alleged deprivation of rights. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Individual liability can be imposed only if the state actor played an affirmative part in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Without any specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. See, e.g., Mearin v. Swartz, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims under Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation). Therefore, to the extent Karpinski purports to invoke liability based on *respondeat superior*, his claims against Pelesky and Krause fail.

### 1.    **Monell Liability**

However, as Karpinski notes, there are ways in which a supervisor can be held liable in a Section 1983 action. For instance, even though municipalities and other local government units and their employees cannot be held liable on a *respondeat superior* theory, they can be subject to liability under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Although Karpinski does not specifically invoke Monell, he does reference policies, customs, and practices that he alleges were implemented and/or enforced by Pelesky and Krause.

Nonetheless, courts have made it clear that "[n]ot all state action rises to the level of a custom or policy. A policy is established 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)). A custom is a course of conduct "'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (quoting Bd. of Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). A plaintiff must demonstrate "an affirmative link" or "plausible nexus" between the policy or custom and the alleged injury. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990).

Moreover, "[i]t is the plaintiff's burden ... to establish that a particular individual is a policymaker." Shaw v. Burlington Cnty. Corr., No. 1:11-cv-07056, 2013 WL 3949021, at *6 (D.N.J. Aug. 1, 2013). Merely labeling a defendant as a final policymaker "is an unsupported legal conclusion, which is not entitled to any deference on a motion to dismiss." Roper v. Luzerne Cnty., No. 3:22-cv-307, 2023 WL 2563082, at *6 (M.D. Pa. Mar. 17, 2023) (citing Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013)).

Here, Karpinski does no more than vaguely describe two policies which he alleges were responsible for his injuries – a prohibition against turning the heat to a higher temperature until the end of November and a prohibition against indoor, out-of-cell recreation for inmates housed in the Security Unit in administrative custody – and suggests that Pelesky, as the Warden of Somerset County Jail, and Krause, as Deputy Warden, were aware of the policies and responsible for their implementation. ECF No. 30 ¶¶ 22-28, 52. However, a warden is not necessarily a policymaker for the purpose of Monell liability. See Shaw, 2013 WL 3949021, at *6 (citing Cortlessa v. Cnty.

9

of Chester, No. 04–1039, 2006 WL 1490145 (E.D. Pa. May 26, 2006) (holding that the warden was not a policymaker under Monell and stating, "[t]he mere fact that [the] Warden ... as part of his duties, supervised prison officials is, by itself, insufficient to confer 'policymaker' status.")); Mayfield v. Montgomery Cnty. Corr. Facility, No. 03–cv-2234, 2008 WL 2633135 (E.D. Pa. July 2, 2008) (finding warden is not necessarily a policymaker for purpose of Monell liability); Kis v. Cnty. of Schuylkill, 866 F. Supp. 1462, 1479 (E.D. Pa. 1994); Thornton v. City of Philadelphia, Civ. No. 04–2536, 2005 WL 2716484 (E.D. Pa. Oct. 21, 2005).

"A plaintiff must instead affirmatively offer evidence that the warden acts as a policymaker." Shaw, 2013 WL 3949021, at *6 (citing Corlessa, 2006 WL 1490145, at *8). See also McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2009) (explaining that a plaintiff who is seeking to impose liability on a municipality via a municipal policy must identify the relevant policy, specify what exactly the policy entails, and show a link between that challenged policy and a municipal decisionmaker such that the imposition of municipal liability is warranted). Karpinski's continued vague allegations that Pelesky and Krause, solely on the basis of their positions as Warden and Deputy Warden respectively, knew of and implemented certain policies does not satisfy this stringent standard. See McTernan, 564 F.3d at 658 (federal pleading rules require a showing that rises above the speculative level rather than a mere blanket assertion of entitlement to relief); McCloskey v. Welch, 803 F. App'x 578, 583 (3d Cir. 2020) (vague assertions, without more, are inadequate to state a Monell claim).[2]

---

[2]    Indeed, Karpinski alleges that John Doe #1 and John Doe #2 created the relevant policies. ECF No. 30 ¶¶ 27-28.

10

### 2.    Deliberate Indifference

Karpinski's claim that Pelesky and Krause's deliberate indifference was sufficient to impose liability fares no better. To establish a plausible Eighth Amendment claim based on prison conditions: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Knox v. Doe, 487 F. App'x 725, 727 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 835).

The allegations contained in the Second Amended Complaint do not meet this standard. First, Karpinski has not sufficiently pled that he suffered from any deprivation that would result in the denial of the minimal civilized measure of life's necessities. "To violate the Eighth Amendment, the prisoner must be 'denied basic human needs, such as food, clothing, shelter, sanitation, medical care [or] personal safety.'" Kates v. Bledsoe, No. 3:11-cv-0391, 2013 WL 4417656, at *6 (M.D. Pa. Aug. 14, 2013) (quoting Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997)). Here, the alleged deprivations included being housed in a 50-degree cell with only one blanket and being denied out-of-cell recreation. Although the Court is sensitive to Karpinski's alleged discomfort, neither alleged deprivation, even if accepted as true, and even giving Karpinski the benefit of every favorable inference, would appear, objectively, to be sufficiently serious to establish an Eighth Amendment violation.

The United States Court of Appeals for the Third Circuit has expressed considerable doubt as to whether deviations in cell temperatures implicate the Eighth Amendment. "It is questionable if having a cold cell … is really an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'" Burkholder v. Newton, 116 F. App'x 358, 363 (3d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Indeed, in finding a plaintiff's allegations that his "cell was unbearably cold, thereby contributing to his mental breakdown" to be insufficient, the Third Circuit emphasized that "[o]nly extreme conditions are actionable." Bracey v. Sec'y Pa. Dep't of Corr., 686 F. App'x 130, 136 (3d Cir. 2017). It is similarly questionable here whether Karpinski's allegation as to the temperature of his cell demonstrates an actionably extreme condition.

Karpinski's claim that although he was permitted outdoor recreation time, he was physically unable to tolerate being outside because of an eye injury, also appears to fail to raise an adequate Eighth Amendment claim. Generally, in determining whether a deprivation of exercise amounts to a sufficiently serious deprivation under the Eighth Amendment, "courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017). Courts considering these factors have found that being deprived of out-of-cell exercise for periods considerably longer than the 20 days alleged here did not constitute a substantial deprivation. See id. (collecting cases). Further, "lack of opportunity to exercise can only rise to a constitutional level 'where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened.'" Dickens v. Danberg, No. Civ. 10-786, 2012 WL 2089516,

at *6 (D. Del. June 8, 2012) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). Karpinski does not allege that any denial of exercise literally caused atrophy or a risk to his health.

Nonetheless, even assuming that Karpinski had adequately pled sufficiently serious deprivations, he has not adequately pled deliberate indifference on the part of Pelesky or Krause. In the Second Amended Complaint, Karpinski merely suggests that Pelesky and Krause probably should have known about his complaints; he does not plead anything that would establish that they knew of the conditions and recklessly disregarded any excessive risk. "When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or a personal involvement in the deprivation of his or her rights, individual liability will not follow." Brooks v. Smith, No. 3:12-cv-2527, 2014 WL 1917539, at *4 (M.D. Pa. May 13, 2014). Karpinski does no more than this in the instant case.

Accordingly, it is recommended that the Court dismiss Karpinski's claims against Defendants Pelesky and Krause in their entirety.

### 3.    Leave to Amend

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview St. Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Id.

The Court previously permitted Karpinski to amend his claims against Pelesky and Krause to cure essentially the same deficiencies the Court has found here. The Second Amended Complaint, however, comes no closer to establishing the level of personal involvement on the part of these Defendants needed for liability to attach. At this point, it appears that Karpinski has no

13

basis for knowing what Pelesky and Krause knew or how their actions rendered them policymakers or constituted deliberate indifference. He continues to merely speculate as to what they may have known. As such, further amendment would be futile, and Counts One and Two should be dismissed against Pelesky and Krause with prejudice.

### E.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Partial Motion to Dismiss filed by Pelesky and Krause, ECF No. 32, be granted. It is further recommended that all claims against Pelesky and Krause be dismissed with prejudice with no leave to amend.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated:  May 28, 2026

cc:    The Honorable Stephanie L. Haines
United States District Judge

All counsel of record by Notice of Electronic Filing